**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**RAYMOND R. CZOLOWSKI, Jr.,**

                            Plaintiff,          5:13-cv-1139
                                               (GLS)
           v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                            Defendant.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Raymond R. Czolowski, Jr.<br>Pro Se<br>2284 Co. Rt. 37<br>Lot 30<br>Mallory, NY 13103 | |
| **FOR THE DEFENDANT:**<br>HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261<br><br>Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | JASON P. PECK<br>Special Assistant U.S. Attorney |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* Raymond R. Czolowski, Jr. challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Czolowski's arguments, the Commissioner's decision is reversed and remanded.

### II. Background

On July 8 and August 11, 2009, Czolowski filed applications for DIB and SSI, respectively, under the Social Security Act ("the Act"), alleging disability since March 30, 2008. (Tr.[1] at 96-109, 211-20.) After his applications were denied, (*id.* at 110-15), Czolowski requested a hearing before an Administrative Law Judge (ALJ), which was held on September 8, 2011, (*id.* at 63-95, 116). On November 14, 2011, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 12.)

Appeals Council's denial of review. (*Id.* at 1-4, 44-62.)

Czolowski commenced the present action by filing his complaint on September 13, 2013 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 11, 12.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 14, 16.)

### III. Contentions

Czolowski contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 14 at 3-8.)[2] Specifically, Czolowski claims that: (1) the ALJ failed to follow the treating physician rule; and (2) his impairments meet or are equivalent in severity to listing 12.04 and 12.08. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 16 at 6-15.)

### IV. Facts

The court incorporates the factual recitations of the parties and the ALJ. (*See generally* Dkt. No. 14; Dkt. No. 16; Tr. at 49-57.)

---

[2] As Czolowski's brief lacks consistent internal pagination, the court will refer to the page number in the header added by the CM-ECF electronic docketing system.

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Treating Physician Rule

Czolowski contends that the ALJ erred in affording little weight to the opinions of treating psychiatrists Antonio Sanchez and Lakshman Prasad. (Dkt. No. 14 at 3-5.) According to Czolowski, because their opinions were consistent with each other, Czolowski's subjective complaints, and his treatment history, as well as supported by clinical findings, they are entitled to controlling weight. (*Id.*) The Commissioner, on the other hand, argues that the ALJ's decision to afford these opinions "little weight" is supported

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

4

by Czolowski's treatment notes, which indicate only mild to moderate symptoms, and the opinion of consulting examiner Kristen Barry. (Dkt. No. 16 at 11-14.) The court agrees with Czolowski that remand is required here.

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "good reasons for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of

5

testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

Here, Czolowski was treated at Oswego Hospital Behavioral Services Division by Drs. Sanchez and Prasad. (Tr. at 437, 521.) In July 2010, Dr. Sanchez completed a Psychiatric/Psychological Impairment Questionnaire and indicated that he treated Czolowski monthly, since July 2000, for intermittent explosive disorder, anxiety disorder, not otherwise specified, and depressive disorder, not otherwise specified. (*Id.* at 493-500.) Dr. Sanchez identified several clinical findings that supported his diagnosis, including poor memory, sleep disturbance, emotional lability, psychomotor agitation, paranoia, suicidal ideation or attempts, social withdrawal, blunt or inappropriate affect, and hostility and irritability. (*Id.* at 494.) According to Dr. Sanchez, Czolowski was markedly limited in his ability to, among other things, maintain attention and concentration for extended periods, work in coordination with others, complete a normal work week and perform at a consistent pace, interact appropriately with the general public, accept instructions from supervisors, get along with co-workers, and respond appropriately to changes in the work setting. (*Id.* at 496-97.) Dr. Sanchez

also reported that Czolowski would likely be absent from work, on average, more than three days per month. (*Id.* at 500.)

Thereafter, Dr. Prasad completed a questionnaire and further diagnosed Czolowski with impulse control disorder, not otherwise specified, history of polysubstance abuse, and antisocial personality disorder. (*Id.* at 571-76.) Dr. Prasad opined that Czolowski was markedly limited in his ability to maintain attention and concentration for extended periods, work in coordination with others, complete a normal work week and perform at a consistent pace, interact appropriately with the general public, accept instructions from supervisors, and get along with co-workers. (*Id.* at 574-75.) Dr. Prasad also concluded that Czolowski would likely be absent from work more than three times a month as a result of his impairments. (*Id.* at 576.)

The ALJ gave both of these opinions "little weight." (*Id.* at 55-56.) He explained that Dr. Sanchez's treatment notes revealed only mild to moderate clinical findings, and Czolowski's seven hospitalizations in nine years, cited by Dr. Sanchez on his questionnaire, were of short duration

and closely related to Czolowski's housing issues.[4] (*Id.* at 55.) Further, the ALJ reasoned that Dr Prasad's opinion was not entitled to controlling weight because he authored it after treating Czolowski for only eight months. (*Id.* at 56, 576.) In addition, the ALJ noted that Dr. Prasad's treatment records indicate that Czolowski was doing well. (*Id.* at 56.)

A review of Dr. Sanchez's treatment notes reveals that Czolowski often presented with mild to moderate clinical findings. (*Id.* at 432, 492, 511, 513-14.) For instance, in August 2010, Czolowski was tense and mildly hostile, mildly depressed, angry and anxious. (*Id.* at 511.) He had a constricted affect, moderately impaired insight, mildly to moderately impaired judgment, and mildly impaired impulse control. (*Id.*) According to Dr. Sanchez, Czolowski reported that "he can do well enough with current medications[,] however[,] he still seem[ed] to be mildly irritable, depressed, and anxious. (*Id.*) Global Assessment of Functioning (GAF) scores[5]

---

[4] Records from Oswego Hospital indicate that at least one treatment provider believed that Czolowski "manipulated the system" by using hospitalizations as a means of shelter. (Tr. at 462, 464.)

[5] The GAF scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004). A GAF score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in school, work, and social functioning. *See Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008). A score between sixty-one and seventy reflects a person with "'[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but [who is] generally functioning pretty well, has some meaningful interpersonal relationships.'" *Id.* at 262 (quoting Diagnostic and Statistical Manual

contained in Dr. Sanchez's treatment notes indicate that he suffered mild to moderate symptoms. (*Id.* at 474, 514.) In addition to Dr. Sanchez's notes, Dr. Prasad's treatment records document, at times, Czolowski's normal mood, speech, orientations, and memory. (*Id.* at 525-26.) On his questionnaire, Dr. Prasad assigned Czolowski a GAF score of sixty to sixty-five. (*Id.* at 571.)

Although these treatment notes in and of themselves appear to suggest that Czolowski's mental impairments were not of great severity, every medical source who has examined Czolowski and offered an opinion as to his functional abilities has indicated that he cannot perform the basic mental functions of work.[6] (*Id.* at 38, 406, 497-500, 575-76.) In addition to Drs. Sanchez and Prasad, consultative examiner Barry opined that, while Czolowski was capable of understanding simple directions and maintaining attention and concentration, he had a long history of antisocial behaviors,

---

of Mental Disorders 34 (4th ed., Text Rev. 2000)). Dr. Sanchez's treatment notes indicate that Czolowski's GAF score ranged between fifty-five and sixty-five. (Tr. at 474, 514.) On the questionnaire, however, Dr. Sanchez reported that Czolowski's lowest GAF score in the previous year was forty-five, indicating "'[s]erious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job).'" *Zabala v. Astrue*, 595 F. 3d. 402, 406 n.2 (2d Cir. 2010) (quoting Diagnostic and Statistical Manual of Mental Disorders at 34); (Tr. at 493.)

[6] Non-examining psychological consultant L. Meade opined that Czolowski was capable of performing simple work that did not require close contact with others. (Tr. at 422-25.)

poor judgment, poor coping skills, difficulty handling stressors, and difficulty relating adequately with others. (*Id.* at 406.) According to Dr. Barry, Czolowski's allegations were consistent with her examination results, which included a poor overall manner of relating and social skills, an irritable and agitated affect, an angry and hostile mood, and poor insight and judgment.[7] (*Id.* at 404-05.) Further, following issuance of the ALJ's decision, but prior to a determination by the Appeals Council, Czolowski submitted additional evidence for review, including the November 2011 opinion of Dr. Suresh Patil, who treated Czolowski during his hospitalizations. (*Id.* at 38, 321-23, 437, 527-29.) Dr. Patil opined that Czolowski was not able to work and "should not attend groups" because he has severe problems with impulse control and anger. (*Id.* at 38.) Czolowski also submitted a February 2012 letter from Dr. Prasad, reaffirming his opinion that Czolowski is unable to work and noting that the "symptoms that cause the most problems" for Czolowski are linked to his impulse control and intermittent explosive disorders. (*Id.* at 11.)

The Appeals Council shall consider "new and material" evidence if it

---

[7] The ALJ afforded this opinion "some weight," and concluded that it was consistent with his residual functional capacity determination. (Tr. at 55.) However, Dr. Barry's conclusion that Czolowski's allegations of disabling mental health problems were consistent with the examination results is seemingly inconsistent with the ALJ's decision. (*Id.* at 406.)

10

"relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.976(b)(1); *see Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). "'Weight of the evidence' is defined as the balance or preponderance of evidence; the inclination of the greater amount of credible evidence to support one side of the issue rather than the other." *Florek v. Comm'r of Soc. Sec.*, No. 08-CV-0919, 2009 WL 3486643, *11 (N.D.N.Y. Oct. 21, 2009) (citation omitted). However, even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez*, 77 F.3d at 45 (internal quotation marks and citation omitted). Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. *Id*. at 45-46.

Here, it is not clear why the Appeals Council discounted the opinions of Drs. Patil and Prasad. *See James v. Comm'r of Soc. Sec.*, No. 06-CV-6180, 2009 WL 2496485, at *10 (E.D.N.Y. Aug. 14, 2009) (holding that "where newly submitted evidence consists of findings made by a claimant's

11

treating physician, the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to a treating source's medical opinion").  The Appeals Council simply stated that all of the newly submitted evidence did not show a reasonable probability of changing the outcome of the decision.  (Tr. at 2.)  While the ALJ discounted Dr. Prasad's August 2011 opinion, in part, because he did not have a longstanding treatment relationship with Czolowski, (*id.* at 55), arguably, this explanation would not apply to Dr. Prasad's February 2012 letter.  In light of the confluence of medical opinion that Czolowski cannot perform the functions of work, and the Appeals Council's disregard of treating physician opinion evidence without explanation, it is not clear that the ALJ's determination is supported by substantial evidence.  Thus, the court remands this case for further consideration.

**B.**     **Remaining Findings and Conclusions**

Because Czolowski's remaining contentions may be impacted by the subsequent proceedings directed by this Order, it is premature to address them at this juncture.[8]

---

[8] Czolowski contends that remand is warranted based upon a favorable decision of the Commissioner on his subsequent application for SSI.  (Dkt. No. 21 at 1.)  Czolowski has not submitted the favorable decision, but, instead, requests the court subpoena the evidence considered on this subsequent claim, as it demonstrates that his disability has been ongoing

12

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 23, 2015
Albany, New York

*[signature: Gary L. Sharpe, Chief Judge, U.S. District Court]*

---

for approximately six years. (*Id.*) Notably, it is not the court's "'function to determine *de novo* whether [a plaintiff] is disabled.'" *Campbell v. Astrue*, 465 F. App'x 4, 5 (2d Cir. 2012) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). Assuming, arguendo, that Czolowski has received a subsequent favorable decision, the ALJ should take the opportunity on remand to review the supporting evidence. *See Sears v. Colvin*, No. 8:12-cv-570, 2013 WL 6506496, at *8 (N.D.N.Y. Dec. 12, 2013) ("'The failure to consider medical evidence obtained after the decision was not the fault of the Commissioner; however, since the Court's disposition on this matter will give the ALJ a fresh opportunity to look at this case, this evidence should certainly be considered on remand.'" (quoting *Kreiter v. Astrue*, Civil Action No. 09-0978, 2010 WL 1133419, at *13 (W.D. Pa. Mar. 23, 2010))).